THE PEOPLE OF THE STATE OF NEW YORK ex rel. CENTRAL HUDSON GAS AND ELECTRIC COMPANY, Respondent, Appellant, *v.* STATE TAX COMMISSION, Appellant, Respondent. (26 separate special franchise proceedings, assessments of 1917–1919.)

Third Department, September 23, 1926.

Taxation — special franchise tax — gross earnings — money paid by con-sumers as condition of installment of equipment — if said money is kept in special capital reserve fund, it is not part of operating revenue — referee properly admitted testimony to show certain receipts were in part not received in exercise of special franchise — donations are not part of operating expenses — taxes on income from investment and interest are not operating expenses — percentage of return on tangible property properly fixed by referee.

The amount of money required from consumers as a condition for the installment of service in their homes or places of business, if carried in a special capital

reserve fund as required by the latest accounting rules of the Public Service Commission, is not a part of the operating revenue of a gas and electric company for the purpose of fixing a special franchise tax assessment. The evidence, however, was not sufficient to show what use was made of the money in question.

It was proper for the referee to receive proof to show that a part of the income received from a telephone company after providing that company with office facilities, etc., constituted receipts from activities not connected with the relator's special franchise, and the relator was not bound by a report to the State Tax Commission of the amount received on the theory that in making the report for a greater amount, it misled the State Tax Commission.

Donations to chamber of commerce, firemen's association, police department, etc., according to the uniform system of accounts prescribed by the Public Service Commission, are deductible from corporate surplus, and are not to be considered as operating expenses.

Taxes paid by the relator on account of income derived from investments and interest should not be charged to operating expenses, especially where the income from the investments and interest is not credited to gross earnings.

The determination of the proper rate of return on the tangible property of the corporation for the purpose of fixing a special franchise assessment is a question of fact to be determined from the evidence and in this proceeding the determination of the referee that the rate of six per cent for the year 1917, six and one-half per cent for the year 1918 and seven per cent for the year 1919 constituted a fair return, is not disturbed by the Appellate Division.

APPEAL by the defendant, State Tax Commission, from separate final orders of the Supreme Court, entered in the office of the clerk of the county of Albany on the 17th day of September, 1925, upon three separate reports of a referee appointed to take evidence and to hear, try and determine the whole issues raised by the petitions and the returns in certiorari proceedings to review special franchise assessments for the years 1917, 1918 and 1919, within the respective cities and towns, except that said defendant does not appeal from said separate final orders in so far as they confirm the assessments in six proceedings for the year 1917 and dismiss the writs therein.

Appeal by the relator, Central Hudson Gas and Electric Company, from said final orders in so far as they fail to reduce the full value of the franchise of the relator within the respective cities and towns and fail to direct the correction of the assessment roll and to provide for a refund upon the review of the assessments for the years 1918 and 1919 and of six assessments for the year 1917, and also from said final orders confirming the assessments and dismissing the writs in six proceedings for the year 1917, except as to its costs.

These are cross-appeals from final orders entered in certiorari proceedings to review special franchise assessments made against the relator in various tax districts in the years 1917, 1918 and 1919, respectively. The assessments for the year 1917 relate to the property of the relator in the city of Poughkeepsie and in the

**62** People ex rel. Cent. H. G. & E. Co. *v.* State Tax Comm.

Third Department, September, 1926. [Vol. 218

towns of Hyde Park, Poughkeepsie, Cornwall, New Windsor, Newburgh, Marlboro, Lloyd, Marbletown, Gardiner, Shawangunk and Montgomery. The assessments for the year 1918 relate to the property of the relator in the cities of Poughkeepsie and Newburgh. The assessments for the year 1919 relate to the property of the relator in the cities of Poughkeepsie and Newburgh and in the towns of Hyde Park, Poughkeepsie, Pleasant Valley, Cornwall, New Windsor, Newburgh, Marlboro, Lloyd, Shawangunk and Montgomery. The State Tax Commission does not take any appeal from the orders involved in the proceedings for the towns of Newburgh, Marlboro, Marbletown, Gardiner, Shawangunk and Montgomery under the assessments for the year 1917. The relator contends that its special franchises have been overvalued. By consent these certiorari proceedings were referred to a referee to take evidence and to hear, try and determine. The proceedings were tried together and the referee has rendered a separate report or decision for each of the years 1917, 1918 and 1919, each report covering all proceedings for one year, and separate orders in each of said proceedings have been made and entered upon the respective reports of the referee. The appeal is from said orders.

*Gould & Wilkie* [*R. L. von Bernuth, John L. Wilkie* and *M. S. Lockhart* of counsel], for the relator, appellant.

*Albert Ottinger, Attorney-General* [*John M. Farrell* and *Frederic J. Merriman* of counsel], for the respondent, appellant.

Hinman, J. This appeal is a companion to the appeal decided herewith involving the special franchise assessments of the relator for the year 1916. (218 App. Div. 44.) The cases were submitted and argued together and many of the points at issue in this appeal have been dealt with in the opinions handed down herewith in the 1916 proceeding. In order to avoid unnecessary repetition this opinion will be addressed to such differences between the parties as have not been covered in the other opinions.

1. Miscellaneous gas and electric revenues — 1919 proceedings. In the 1919 proceeding an element was introduced which is not found in the other proceedings. The referee included as a part of the gross earnings of the relator payments made by consumers for extensions of gas and electric service into their premises and installations of special metering devices. The property remained the property of the relator. The consumers agreed to share the cost of the property in exchange for its installation. The relator claims that the amounts received from consumers for these installations were donations to capital account of the relator and not a part of its income and that by the last accounting rules of the

Public Service Commission the relator is obliged to carry the amounts so paid in a special capital reserve fund and is not allowed to declare dividends therefrom. The relator, therefore, claims that the referee erred in including these revenues as a part of the gross receipts. The respondent contends that if the relator in addition to charging the usual rates compels a consumer to pay for an extension to the company's property, and that property is to belong to the company, then the cost of that extension represents additional revenue of the company for services rendered. Let us assume that the public service rule considers that it is not a service charge but a partial reimbursement for capital expended and *pro tanto* reduces to the company the costs of its own property. In that event a similar method should be employed in figuring the cost of reproduction of that portion of the relator's physical property in figuring a return upon the relator's tangible property. It is not claimed that any such method was adopted in figuring the present value of that portion of relator's property and it may be that the relator has been allowed a return upon the full value of such property without any consideration of such special capital reserve fund, which represents to the relator a portion of the initial cost of such property. If such payments have in fact been carried in a special capital reserve fund, upon which dividends cannot be declared, they do not constitute what is commonly known as operating revenue. We are not enlightened as to the use of such fund or the income therefrom, which is permitted under the rules of the Public Service Commission. Any income therefrom may be a part of the operating revenues and it would seem that the fund itself should be considered in reduction of the value of relator's physical property to which it is related. This is a matter to be reconsidered before the Special Term when the proceeding is remitted thereto.

2. Cornwall Telephone Company. In its report to the Tax Commission (1917 proceeding) the relator, under a schedule entitled " operation of others, profit or loss," reported that it had received $1,891.94 from Cornwall Telephone Company " for providing office facilities, keeping books of account, providing a suitable staff of employees for the purpose of patrolling, maintaining and repairing lines, wires, equipment and apparatus and permitting the Cornwall Telephone Company to string and maintain its wires and cables upon the poles " of the relator and that relator received fifty per cent of the income of the Cornwall Telephone Company. The relator proved upon the trial that $547 was the correct amount applicable to its special franchise. This is not disputed but the respondent now urges that the relator is now estopped from denying

**64** PEOPLE EX REL. CENT. H. G. & E. CO. *v.* STATE TAX COMM.

Third Department, September, 1926.                    [Vol. 218

its own report in which it is claimed the relator misled the Tax Commission. The respondent claims that its motion to strike out the evidence should have been granted and the amount left at $1,891.94 as an item of gross receipts. We think that the referee was right in taking the proof and using it to reduce the amount to the correct figure. The report showed that the schedule referred to operations of a company other than the relator and the inference therefrom was that the amount received related to and included receipts from activities not connected with the relator's special franchise.

3. Operating expenses — other deductions from income. The respondent claims that a portion of these expenses represented donations to chamber of commerce, firemen's association, police department, etc. According to the uniform system of accounts for electrical corporations prescribed by the Public Service Commission such charges as donations are deducted from corporate surplus. They are not an expense incident to operating revenue and are not properly deducted in determining net earnings. The referee seems to have erred in including in the items allowed by him under the above heading such items as related to donations. The contention of the respondent should be applied.

4. Operating expenses — taxes. The respondent claims that the relator has improperly included in taxes the taxes paid by it on account of income derived from investments and interest without including such income from investments and interest in its gross earnings. The relator makes no reply to this contention and we think the referee erred in including taxes applicable to investments and interest.

5. Rate of return on tangibles. The referee has allowed the relator's claim of a six per cent return on relator's tangible property for 1917; six and one-half per cent for 1918; and seven per cent for 1919. The rule seems to be that the rate of return is determined by what rate is requisite to induce investors to embark their money in enterprises such as that undertaken by the relator. (*People ex rel. Jamaica Water. Supply Co.* v. *Tax Commissioners,* 196 N. Y. 39, 58.) Also the question is what return should be made not upon the tangible property alone but upon all of the property tangible and intangible. The return comes from the combined use of both tangible and intangible property. (*People ex rel. Third Avenue R. R. Co.* v. *Tax Commissioners,* 136 App. Div. 155, 158.) What this fair rate of return was during the period under consideration is a question of fact to be determined from the evidence presented. (*People ex rel. Manhattan Railway Co.* v. *Woodbury,* 203 N. Y. 231, 237; *People ex rel. Third Avenue R. R. Co.* v. *Tax*

*Commissioners,* 212 id. 472, 485.) In *Lincoln Gas Company* v. *Lincoln* (250 U. S. 256, 268 [1919]) the United States Supreme Court said: " Annual returns upon capital and enterprise the world over have materially increased, so that what would have been a proper rate of return for capital invested in gas plants and similar public utilities a few years ago furnishes no safe criterion for the present or for the future." The relator produced testimony, which was uncontradicted, and which tended to prove that capital in the open market for investment in the public utilities similar to the relator commanded at least the rates which have been approved by the referee for the various years covered by these proceedings. The referee has found that the rates claimed by the relator were fair and in our judgment the referee's findings should be sustained.

The orders appealed from should be reversed, without costs to either party, and the proceedings remitted to the Special Term for further hearing and disposition in accordance with this opinion and the opinions handed down herewith in the 1916 proceeding.

All concur.

Final orders reversed on the law and facts, without costs to either party, and proceedings remitted to the Special Term for further hearing and disposition in accordance with the opinion herein and the opinions in *People ex rel. Central Hudson Gas & Electric Co.* v. *State Tax Commission (Special Franchise Proceedings, 1916)* (218 App. Div. 44). The court disapproves the following findings of fact: 20, 22, 29, 31, 32, 33, 37 and 38, as to the 1917, 1918 and 1919 proceedings, respectively.